UNIVERSAL TOBACCO MACH. CO. v. BORGFELDT STRIPPING MACH. CO.

(Circuit Court of Appeals, Second Circuit. June 9, 1914.)

No. 282.

1. PATENTS (§ 328*)—VALIDITY AND INVENTION—TOBACCO STRIPPING MACHINE.

The Deiller patent, No. 985,984, for a tobacco stripping and booking machine, claim 11, was not anticipated, covers a meritorious invention, and is valid; also *held* infringed.

2. PATENTS (§ 124*)—VALIDITY—MISSTATEMENTS IN SPECIFICATION.

That the specification makes exaggerated or unwarranted statements as to the capabilities of the invention, even conceding that an infringer can interpose that as a defense, does not render the patent invalid, unless the statements were made fraudulently, and the patentee was a party thereto.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 176; Dec. Dig. § 124.*]

Appeal from the District Court of the United States for the Southern District of New York.

Appeal by defendant below from an interlocutory decree of the District Court, Southern District of New York, holding valid and infringed claim 11 of United States letters patent No. 985,984, dated March 7, 1911, granted to Martin and Eugene M. Deiller for a tobacco stripping and booking machine. Two suits were originally brought, which by order were duly consolidated.

T. H. Anderson, of New York City, for appellant.

Park Benjamin, of New York City, for appellee.

Before ROGERS, Circuit Judge, and VEEDER and MAYER, District Judges.

MAYER, District Judge. Nine claims were declared on, but the sole controversy now is as to claim 11, which reads as follows:

"11. A tobacco stemming machine comprising a rotatable drum, two circumferential flanges thereon having cutting edges, a rotary cutter coacting with said flanges to divide the leaf longitudinally on opposite sides of said stem, two transversely flexible belts passing around a portion of the drum periphery and having their inner edges in proximity to the outer faces of said flanges and supporting rollers for said belts; one of said rollers being located directly in front of said cutter."

The defenses remaining in the case are (1) noninvention; (2) noninfringement; and (3) fraud in the procuring of the patent.

[1] The invention has to do with a machine for stripping a tobacco leaf, so as to remove the midrib or stem with no membrane adhering thereto, and thus to leave the two wing portions of the leaf as nearly unimpaired as possible. The stem is, of course, unfit for smoking purposes and must be removed; but, to avoid waste, it is desirable that no particles of the resultant leaves be attached to the stem and thereby rendered useless. While the adherent portion in an inefficient opera-

tion may be very small in each case, the aggregate to be saved in leaf tonnage is very large, and represents a substantial commercial elimination of waste.

At first these stems were removed by hand, and later practical men and inventors turned their attention to devising machines to accomplish the desired result. The industry appreciated the importance of the problem, as is reflected by the large number of United States patents issued from 1870 down to the time of the patent in suit. But the task was not easy. The tobacco leaf is very delicate. The stem is of woody fiber, and tapers from the butt end of the leaf to the point. When the leaf is prepared for stripping, it must be moistened; and, being tender, it is easily torn, and thus the line of division is liable to be irregular. The device of the patent is a fascinating piece of machinery, which acts with almost human movement.

The elements of claim 11 are (1) the rotatable drum; (2) the two circumferential flanges; (3) the rotary cutter; (4) two transversely flexible belts; (5) supporting rollers for the belts, one of which is to be situated directly in front of the cutter. This supporting roller is obviously a feed roller (shown by No. 38 in sheet 1 of the patent drawings).

The operator introduces the leaf, usually point foremost, under the feed roller, hence under the belts, so that the stem lies in the gap between the drum sections, and the wing portions extend over the flanges. As soon as the moving leaf meets the belts, they press these wing portions down until they meet the drum periphery. Then they are grasped between the belts and the drum and carried onward as the drum rotates; that is to say, during the period in which the leaf is traveling from feed roller to drum periphery, its wing portions are being pressed downwardly by the belts which extend in a straight line from feed roller to drum on each side of the drum flanges. The transverse strain due to the pressure of the belts tautens or stretches the leaf across the gap between the flanges, so that, when it reaches the rotary cutter, two smooth, even cuts on opposite sides of the stem will be produced.

Each of the operations requires the greatest accuracy and care, and the result attained justifies the assertion of appellee that the combined elements operate to feed the leaf and control its movement longitudinally, to tauten the membrane over the sharp flange edges by very delicate elastic pressure, to control the strain by the implacement of the belts in respect of the drum flanges, so that that strain cannot exceed a predetermined limit, to regulate the moment of cutting, so as to take place at any desired period during the rise of the strain, and, while the leaf is under this control, to cut it before there is any opportunity for escape of the stem from between the flanges.

The practicability and usefulness of the machine were demonstrated by the fact that in less than two years deliveries were made and orders obtained representing in money an aggregate of over $300,000. In January, 1912, less than a year after the patent became known, defendant company was organized to engage in the business of making and letting of tobacco stripping machines, and defendant's advertisements

show a full appreciation of the commercial value of such machines. The proof leaves no doubt that acts of infringement were committed, if defendant's machines are infringements.

As to the prior art: Of the patents cited, only two need be referred to: (1) No. 813,868, dated February 27, 1906, to Deiller, one of the joint patentees of the patent in suit; and (2) No. 717,317, dated December 30, 1902, to Baechlin. The Deiller, No. 813,868, does not describe an operative machine, and there is no reason to doubt the statement in the file wrapper of the patent in suit that "the contrivance wholly failed" and that certain parts of the mechanism tore the leaf "to pieces." In the Baechlin patent there is no transverse stretching action exerted by the belts upon the part of the leaf which extends over the flanges, and the leaf is not pressed down over the flanges with elastic pressure before the cutting operation occurs. There is no immediate cutting of the leaf as soon as stretched, and there is an interval over which there is nothing to keep the stem from rising out of the spaces between the flanges.

As to prior uses: Only two similar machines (known in the case as Exhibits U and V) need be considered. Without describing in detail the operation of these machines, there are at least two features in which they differ, in substantial respects, from the machine of the patent: (1) The leaf is not fed and its movement controlled in a longitudinal direction by belts and drum flanges, but by fingers, which drag the leaf positively along; (2) the leaf is not cut immediately while under control and before the stem has had time to escape between the flanges, but, on the contrary, the only control of the leaf is the pulling along by the fingers and flattening by rollers, the stem being kept in the flanges by an added middle disk.

Exhibits U and V differ from the machine of the Baechlin patent, which does not show gripping fingers, loose pressing disks, and a middle disk for holding down the stem. As the District Judge pointed out, these exhibits embody the elements of claim 11, but they do not operate in the same way, nor do they accomplish the almost perfect result of the machine of the patent.

But extended technical discussion is unnecessary, because this is one of those instances where "actions speak louder than words." Richard Borgfeldt, president of defendant company, was thoroughly familiar with Exhibit U, and testified that he had seen it in operation when he first met Baechlin, now fully 10 years ago and Nicholas H. Borgfeldt, Richard's father, stated that he saw this machine in 1904.

A man as familiar with the art as Richard Borgfeldt, and as keenly appreciative of the commercial necessity and possibilities of a successful machine, would not have permitted the right device to be relegated to the storeroom of abandoned experiments. This is not the case of an inventor with little or no means, who cannot convince capital of the merit of his invention, and the result of whose labor is stolen by another. On the contrary, the case is one where a prior device failed in the hands of practical and hardheaded business men, because it did not accomplish the result which was vital to success; and, as has often been pointed out, if either the Baechlin patent or Exhibit U is all that

is claimed for it, the appellant is at liberty to manufacture and sell such machines to the fullest extent.

Our view is that the history of the art demonstrates that the patent in suit is for a meritorious invention, which has accomplished the stripping of tobacco with the nearest elimination of waste thus far known. We think there is no merit in the contentions as to noninfringement.

Whether the drum drives the belts, or the belts drive the drum, if a difference, is of no consequence; nor is it material whether the cutter in on machine is set at some distance back of the feed roll, while in the other the roller is directly in front of the cutter. Likewise, in view of the expression of the claim, "belts * * * having their inner edges in *proximity* to the outer faces of said flanges and two supporting rollers for such belts," there is no force in the argument that, because the belts in defendant's machine "are located and positively positioned quite a distance from the outer surface of the flanges," they are not "proximate" thereto. In brief, such changes are the obvious illustrations of efforts to escape infringement.

[2] Finally, it is claimed that the patent is void because the specification was fraudulent and deceptive in respect of statements as to the ability of the machine to stretch the leaf laterally to expand the stem.

There is no doubt that the machine cannot accomplish this result. It would seem that only the United States can raise this point (Western Glass Co. v. Schmertz Wire Glass Co., 185 Fed. 788, 109 C. C. A. 1; Eastern Paper Bag Co. v. Continental Paper Bag Co. [C. C.] 142 Fed. 479); but, irrespective of the question as to whether appellant can interpose this defense, there is no evidence that the patentees, Martin and Eugene M. Deiller, were parties to the fraud, if such it were.

Our conclusion is that claim 11 is valid and infringed, and therefore that the interlocutory decree should be affirmed, with costs.